IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

FOREST FETTY,

          Plaintiff,

v.                                                                  CIVIL ACTION NO. 3:10-0154

WILMINGTON FINANCE, INC. and
HSBC MORTGAGE SERVICES, INC.,

          Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Wilmington Finance Inc.'s (Wilmington's) Motion for Summary Judgment. [Doc. No. 8]. Plaintiff Forest Fetty opposes the motion. For the following reasons, the Court **DENIES** the motion as to Counts II and III and **DENIES** the motion **without prejudice** as to Counts I and IV.

## I.
## PROCEDURAL AND FACTUAL HISTORY

On January 5, 2010, Plaintiff filed an action against Defendants Wilmington and HSBC Mortgage Services, Inc. (HSBC) in the Circuit Court of Cabell County, West Virginia. On February 18, 2010, Defendants removed the action to this Court based upon diversity of citizenship under 28 U.S.C. § 1332(a). *See* 28 U.S.C. § 1441(a). Thereafter, on February 24, 2010, this Court entered an Order and Notice directing, inter alia, that the parties submit a Rule 26(f) report on or before April 12, 2010. Prior to submitting the report and prior to any discovery taking place, Wilmington filed its Motion for Summary Judgment on April 1, 2010. Plaintiff opposes the motion as being premature and, for the following reasons, the Court agrees.

In his Complaint, Plaintiff alleges that he and his then wife purchased a house for $78,000 in the Spring of 2006. Plaintiff states that he spoke with a loan officer at Preferred Credit, Inc., a now defunct mortgage brokerage company, about his financing options. According to Plaintiff, the loan officer represented to Plaintiff that he could get a loan at a fixed interest rate with payments of $505 per month and that someone would come to his house to close the loan. Plaintiff states the closing was rushed and he was just told where to sign without a sufficient explanation of what the documents he was signing were. He also asserts he learned for the first time at the closing that his payments would be $707, more than $200 over what he was originally told. Despite the increase, Plaintiff states he felt pressured to sign the loan papers because he was contractually obligated to buy the house. Plaintiff claims he also was unaware the loan contained an exploding adjustable rate mortgage (ARM), which had an initial rate of 10.390%, that could increase to 16.661%. In addition, he states he was unaware the loan contained a yield spread premium, which essentially is a kickback from the lender to the broker for convincing a customer to accept a higher interest rate than what the customer was eligible to receive. The loan was closed in the name of Wilmington.

Plaintiff claims that in or around August-September 2006, the servicing rights on the loan were transferred to Household Finance, now HSBC. Plaintiff made payments on the loan, but he began to struggle with making payments in January of 2008, after he and his wife separated. Plaintiff states that he contacted HSBC in or around February of 2008 to discuss his financial situation and his desire to keep his home for himself and his children. Despite representations by HSBC that it would send Plaintiff a hardship package and consider a loan modification, Plaintiff

states he never received it. In addition, although he made repeated efforts to obtain a loan modification and continued making what payments he could, HSBC ignored his requests and demanded full payment of his arrearage. Finally, in April of 2009, HSBC returned his monthly payment and referred the loan to foreclosure.

Plaintiff asserts four causes of action in his Complaint. Count I is a claim for unconscionable contract against both Defendants. Count II is for breach of contract against HSBC. Count III is for illegal debt collection against HSBC. Count IV is a claim of joint venture and agency against both Defendants. Wilmington moves for summary judgment on each of these counts, but acknowledges it is unclear whether Counts II and III apply to it. In its Response, Plaintiff states that neither of these counts are alleged against Wilmington and, thus, need not be considered by the Court. Given that the allegations in Counts II and III are not alleged against Wilmington, the Court **DENIES** its motion with regard to these counts and will proceed to discuss the motion with respect to Counts I and IV.

## II.
## STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252.

## III.
## DISCUSSION

Wilmington moves for summary judgment on Count I on the grounds that the facts of this case do not support his claim. In Count I, Plaintiff asserts that the loan is unenforceable under West Virginia Code § 46A-2-121 because it was made and/or induced by unconscionable conduct.[1] Under West Virginia law, "inequity of bargaining power alone does not indicate an

---

[1] West Virginia Code § 46A-2-121 provides:

> (1) With respect to a transaction which is or gives rise to a consumer credit sale, consumer lease or consumer loan, if the court as a matter of law finds:
>
> > (a) The agreement or transaction to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct, the court may refuse to enforce the agreement, or
> >
> > (b) Any term or part of the agreement or transaction to have been

(continued...)

unconscionable contract." *Adkins v. Labor Ready, Inc.*, 185 F. Supp.2d 628, 636 (S.D. W. Va. 2001) (footnote omitted). Rather, "[a] determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and 'the existence of unfair terms in the contract.'" Syl. Pt. 4, *Art's Flower Shop, Inc. v. Chesapeake & Potomac Tel. Co.*, 186 W. Va. 613, 413 S.E.2d 670 (1991). "[G]ross inadequacy in bargaining power, together with terms unreasonably favorable to the stronger party, may confirm indications that the transaction involved elements of deception or compulsion or may show that the weaker party had no meaningful, no real alternative, . . . to the unfair terms. " *Id.* at 617-18, 413 S.E.2d at 674-75 (citations omitted). In addition, pursuant to West Virginia Code § 46-2-121(2), "the parties shall be afforded a reasonable opportunity to present evidence as to its setting,

---

[1](...continued)
> unconscionable at the time it was made, the court may refuse to enforce the agreement, or may enforce the remainder of the agreement without the unconscionable term or part, or may so limit the application of any unconscionable term or part as to avoid any unconscionable result.
>
> (2) If it is claimed or appears to the court that the agreement or transaction or any term or part thereof may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose and effect to aid the court in making the determination.
>
> (3) For the purpose of this section, a charge or practice expressly permitted by this chapter is not unconscionable.

W. Va. Code § 46A-2-121.

purpose and effect to aid the court in making the determination" of whether or not an unconscionable contract exists.

Plaintiff alleges the loan in this case is unconscionable because he is unsophisticated in financial matters and the loan process was unfair. Specifically, Plaintiff asserts (a) the loan exceeded his ability to pay; (b) the monthly rate was higher than previously represented to him; (c) it contained an exploding ARM, and (d) it a contained a yield spread premium. Wilmington responds by disputing each of these allegations.

With its motion, Wilmington submits documents showing that there was not an exploding ARM. Rather, it was a fixed interest rate of 10.390%. Wilmington insists that this rate is well below the legal thresholds. Wilmington also asserts that Plaintiff was provided documents prior to the closing showing his payments would be $707.09 so he did not first learn of it at the closing. Likewise, Wilmington states that the yield spread premium was disclosed to Plaintiff but, even if it was not, it is not an unfair term. In addition, Wilmington insists that the loan was prudent in light of Plaintiff's verified employment and income as he had a debt to income ratio below industry standards. Finally, Wilmington argues Plaintiff was not forced to sign the loan.

In response to Wilmington's motion, counsel for Plaintiff submitted an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure averring that, as discovery had not even begun in this matter, Plaintiff "cannot present sufficient facts essential to justify . . . [his] opposition" to the motion. *Fed. R. Civ. P.* 56(f), in part. Counsel further states in his affidavit that,

"[a]t least some of the documents produced [and attached to Wilmington's motion] are different from documents provided to the Plaintiff." *Affidavit of Bren J. Pomponio*, at ¶ 4, in part. In addition, counsel maintains that discovery is "necessary to determine the relationship between the broker and . . . Wilmington[, and] . . . to determine what [interest] rate Plaintiff qualified for pursuant to Wilmington's underwriting guidelines" and should have received, but for the yield spread premium. *Id*. at ¶ 5. Finally, counsel asserts "discovery is necessary for Plaintiff to establish the circumstances and setting of the loan transaction in support of his claim of unconscionable contract." *Id*. at ¶ 6.

Pursuant to Rule 56(e), "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986) (quoting, in part, Rule 56(e) (footnotes omitted). However, this rule is qualified by Rule 56(f) which provides "that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Id*. at n. 5.[2] In this regard, the Fourth Circuit has stated that "[a]

---

[2]Rule 56(f) provides:

> **(f) When Affidavits Are Unavailable.** If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> **(1)** deny the motion;
>
> **(2)** order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or

(continued...)

denial of a Rule 56(f) application is disfavored if the motion identifies relevant information and there is some basis for believing the information actually exists." *Richard v. Leavitt*, 235 Fed. Appx. 167, *1(4th Cir. 2007) (per curiam) (citing *Ingle v. Yelton*, 439 F.3d 191, 196 (4th Cir.2006) (citing *VISA Int'l Serv. Ass'n v. Bankcard Holders of Am.*, 784 F.2d 1472, 1475 (9th Cir.1986))).

Upon consideration of the parties' arguments and the Rule 56(f) affidavit, the Court finds that Wilmington's motion with respect to Count I is premature. Although Wilmington asserts its documents clearly show that the contract is not unconscionable, Mr. Pomponio states in his affidavit that at least some of the documents Wilmington submitted are different than the ones that Plaintiff states he was provided. Wilmington also argues that Mr. Pomponio failed to identify "specific facts" he hopes to obtain through discovery which are material in opposition to Wilmington's motion. The Court disagrees and finds there is a sufficient basis to believe evidence exists which is relevant to Plaintiff's claims. For instance, Mr. Pomponio clearly asserts discovery is necessary to establish the circumstances surrounding the loan and what interest rate Plaintiff was qualified to receive, but for the yield spread premium. This information may have a direct impact on Plaintiff's claim of unconscionability. However, as discovery had not yet occurred at the time the motion was filed, Plaintiff did not have an opportunity to conduct discovery on these issues. Thus, the Court finds that counsel has more than adequately explained why Plaintiff cannot present

---

²(...continued)
        **(3)** issue any other just order.

*Fed. R. Civ. P.* 56(f).

-8-

sufficient facts to oppose the motion and **DENIES** the motion with respect to Court I **without prejudice**.

The Court reaches the same decision with respect to Wilmington's motion for summary judgment on Plaintiff's Joint Venture and Agency claim in Count IV. Wilmington argues it is clear under the agreements between Preferred Credit and itself that Preferred Credit acted as an independent contractor and Wilmington exerted no degree of control over Preferred Credit. Moreover, Wilmington states that Plaintiff was aware Preferred Credit was an independent contractor. Again, the Court finds it premature to rule on these matters. Although there may be documentary evidence to support Wilmington's position, Plaintiff should have the opportunity to explore that evidence and other evidence regarding the relationship between Wilmington and Preferred Credit with respect to his claim. As Plaintiff did not have the opportunity to pursue discovery on these issues prior to the motion being filed, and counsel has filed a Rule 56(f) affidavit stating that he needs the opportunity to do so in order present sufficient facts to oppose the motion, the Court also **DENIES** the motion with respect to Court IV **without prejudice**.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Wilmington's Motion for Summary Judgment as to Counts II and III and **DENIES without prejudice** the motion with respect to Counts I and IV.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

      ENTER:      October 26, 2010

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE